IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| ELIZABETH JACO,<br><br>                    Plaintiff,<br><br>        vs.<br><br>LELAND DUDEK,<br>Acting Commissioner of Social Security<br>Administration,<br><br>                    Defendant. | Civil No. 24-00472 MWJS-KJM<br><br>ORDER REVERSING DECISION OF THE<br>COMMISSIONER OF SOCIAL SECURITY<br>AND REMANDING FOR FURTHER<br>ADMINISTRATIVE PROCEEDINGS |

## **INTRODUCTION**

Plaintiff Elizabeth Jaco applied for Social Security disability insurance benefits

and supplemental security income based on her post-traumatic stress disorder (PTSD),

generalized anxiety disorder, and major depressive disorder.  In a hearing before an

Administrative Law Judge (ALJ), she testified that her symptoms from these severe

impairments—which included being unable to get out of bed three days out of the

typical week—rendered her unable to work full-time.  The ALJ found that Jaco did

indeed suffer from severe impairments, but nonetheless denied her applications on the

ground that her symptoms were not as serious as Jaco had represented.

Jaco now appeals, contending that the ALJ failed to articulate sufficient reasons

for discrediting her testimony about the severity of her symptoms.  She notes that under

Ninth Circuit precedent, the ALJ was required to "provide specific, cogent reasons" for disbelieving her symptom testimony, and that those reasons had to be "clear and convincing."  *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007).  And she argues that the ALJ failed to meet this demanding standard.

The Court agrees that the ALJ has not satisfied the Ninth Circuit's requirements for denying symptom testimony.  For that reason, the Court REVERSES the decision denying Jaco's applications and REMANDS for further administrative proceedings.

## BACKGROUND

### A.    The Hearing

After her applications for Social Security benefits and supplemental income were denied at the state agency level, Jaco sought a hearing before an ALJ.  *See* ECF No. 6-3, at PageID.34 (Administrative Record (AR) at 17).  Jaco testified at that hearing, as did a vocational expert (VE).

1.   In her testimony, Jaco explained that as of July 1, 2022, anxiety attacks, migraines, and major depression were preventing her from working full-time.  *See id*. at PageID.90-91 (AR at 73-74) (anxiety attacks and migraines); *id*. at PageID.93-94 (AR at 76-77) (major depression); *id*. at PageID.59-60 (AR at 42-43) (onset of symptoms on July 1, 2022).

Jaco testified that she suffered from migraines once a week, and that they sometimes lasted for hours.  *Id*. at PageID.91 (AR at 74).  Jaco acknowledged that she

was taking medication, and that the medication helped to make the migraines less

frequent.  *Id.* at PageID.92 (AR at 75).  But she recounted how, even after taking

medication, she had to "either sit down or lay down for as long as the[ migraines] stay,

because [she] can't function with them."  *Id.*[1]

Jaco testified that her anxiety attacks similarly caused significant pain:  "it's so

painful . . . my chest is so painful.  My arm feels like somebody has a tourniquet around

my arm.  That's how painful it is.  And my head gets really sore from it."  *Id.* at

PageID.93 (AR at 76).  Jaco acknowledged that she was taking medication for her

anxiety, but explained that the medication would only sometimes work.  *Id.*

("Sometimes, they work.  Sometimes, yes . . . . Just depends on how I do the breathing

exercise and, you know, pray for the best sometimes.").

In addition, Jaco described how her depression significantly affected her:

"Sometimes, I wake up, and it feels like I'm in a tunnel or inside of a well.  Everything's

dark.  It's like somebody puts a Band-Aid over my eyes."  *Id.*  Jaco explained that she

could not get out of bed as often as three days a week, and on three occasions a month,

---

[1]    In his briefing to this Court, the Commissioner contends that Jaco's opening brief declined to challenge the ALJ's finding that her migraines did not significantly limit her ability to function.  ECF No. 10, at PageID.1255 n.2.  That is not obviously correct:  the migraines appear to have been at least in part a symptom of Jaco's PTSD, anxiety, and depression, and Jaco generally challenges the ALJ's rejection of her symptom testimony.  Nonetheless, because Jaco does not appear to address the Commissioner's argument in her reply brief, *see* ECF No. 11, the Court will not consider Jaco's testimony concerning her migraines in its consideration of her appeal.

she would stay up for three to four days without being able to sleep.  *Id.* at PageID.98-99

(AR at 81-82).  And she explained that whenever she could not sleep, she would be "like

a zombie with pain, body aches, everything."  *Id.* at PageID.94 (AR at 77).

Owing to these symptoms from her migraines, anxiety, and depression, Jaco—

who lived in Hawaiʻi with her aunt and three young daughters—was "not able to

participate [in] anything that [her] daughters do."  *Id.*  Nor was Jaco consistently or

significantly able to participate in other everyday activities.  She testified that she could

not go grocery shopping on her own, and that she only went shopping with her aunt

once a month.  *Id.* at PageID.96 (AR at 79).  She testified that she picked up part-time

employment, but that her aunt had to drive her there, she had to stay in the parking lot

"talking to [herself]" to build up the courage to enter, and she sometimes had to leave

after "a few hours" because of her anxiety attacks.  *Id.* at PageID.96-97 (AR at 79-80).

She testified that her aunt would make meals for her children and buy them school

supplies.  *Id.* at PageID.99 (AR at 82).  And she testified that she would not cook the

meals for her children because she would "burn everything, including the pots," as she

was "not in [her] mind."  *Id.*

2.  The VE testified about available work under three hypothetical scenarios.  In

the first, the ALJ asked the VE to assume "an individual with the same age, education,

and work experience" as Jaco.  *Id.* at PageID.101 (AR at 84).  The ALJ then described a

hypothetical person who "can perform simple work, involving no more than occasional

interaction with co-workers and supervisors and no interaction with the general public

as a job duty." *Id.* That person could "do work that does not involve production pace,

such as assembly line." *Id.* In addition, the person's work could involve "[n]o

hazardous moving machinery, nor unprotected heights, no ladders, ropes, or scaffolds."

*Id.* With these assumptions, the VE testified that Jaco's past work as a receptionist,

hospital admitting clerk, and service clerk would all be ruled out. *Id.* But the VE

testified that the hypothetical individual could work as a price marker, mail sorter, or

office helper, which are jobs that exist in significant number in the national economy.

*Id.* at PageID.102 (AR at 85).

In the second hypothetical, the VE was asked to consider all of the same

limitations as in the first, except that "in addition, this individual will incur two

unscheduled absences monthly." *Id.* In this hypothetical scenario, the VE testified that

the person would not be able to maintain employment. *Id.*

The third hypothetical similarly began with the same limitations as the first, but

this time, the VE was asked to consider an individual who "would require an additional

40 minutes of unscheduled work breaks." *Id.* at PageID.103 (AR at 86). The VE testified

that there would be no full-time work in this third hypothetical scenario, because "[t]hat

would be too much time being unproductive to maintain work." *Id.*

**B.    The ALJ's Written Decision**

Following the hearing, the ALJ issued a written decision denying Jaco's

applications.  ECF No. 6-3, at PageID.31-46 (AR at 14-29).

Social Security regulations require ALJs to follow a "five-step sequential process

for determining whether an applicant is disabled within the meaning of the Social

Security Act," *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011), and

the ALJ's written decision worked through each of those steps.  At step one, the ALJ

found that Jaco had not engaged in "substantial gainful activity" since July 1, 2022.  ECF

No. 6-3, at PageID.36-37 (AR at 19-20).  At step two, the ALJ found that Jaco suffered

from the following severe impairments:  PTSD, generalized anxiety disorder, and major

depressive order.[2]  *Id.* at PageID.37 (AR at 20).  The ALJ also identified several non-

severe impairments, including hyperlipidemia, migraines, and obesity.  *Id.* at

PageID.37-38 (AR at 20-21).  At step three, the ALJ found that Jaco's impairments,

whether standing alone or combined, did not meet or medically equal the severity of an

impairment that would qualify her as disabled without regard to age, education, or

work experience.  *Id.* at PageID.38-40 (AR at 21-23).  For that reason, the ALJ was

---

[2]    The ALJ also identified alcohol abuse disorder as a severe impairment, but the
record does not appear to contain evidence that Jaco suffers from that disorder.  Jaco
did testify at the hearing that, on one occasion, she was hospitalized after drinking
something that appeared to have been spiked.  *See* ECF No. 6-3, at PageID.67 (AR at 50).
But the ALJ did not explain why this testimony would support a finding of alcohol
abuse disorder, and in his briefing to this Court, the Commissioner does not appear to
defend the finding.

required to make a finding about Jaco's residual functional capacity, or "RFC." A claimant's RFC is used to answer the questions at steps four and five: whether the claimant is able to perform any work she has done in the past, and whether there are significant numbers of jobs in the national economy that the claimant can perform. *See Keyser*, 648 F.3d at 724-25.

Despite Jaco's testimony about the severity of her symptoms, the ALJ found that Jaco had the RFC "to perform a full range of work at all exertional levels," with the following nonexertional limitations: "The claimant is limited to simple work involving no more than occasional interaction with coworkers and supervisors and no work with the general public as job duty. She can have no production pace work such as assembly line. She can do work that does not involve operation of hazardous moving machinery, unprotected height, nor ladders, ropes, or scaffolds." ECF No. 6-3, at PageID.40 (AR at 23).

In adopting this RFC, the ALJ did not accept that Jaco would need to take off two unscheduled days a month. Nor did the ALJ accept that Jaco would need forty minutes of unscheduled break time during a workday. The ALJ thus rejected Jaco's symptom testimony, which, if credited, would have established that absences of that sort would be needed.[3]

---

[3]    The ALJ likewise rejected the medical opinion of Jaco's treating therapist, Akoni Kanaele, Marriage and Family Therapist (MFT) of the Big Island Health Clinic, who had opined that Jaco's symptoms would require her to miss more than three days of work

To be sure, the ALJ found no malingering on Jaco's part, and also found that Jaco's "medically determinable impairments *could* reasonably be expected to cause more than minimal limitations as to the mental areas of work-related functioning." *Id.* at PageID.41 (AR at 24). But the ALJ concluded that Jaco's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.*[4]

The ALJ's written decision identified three reasons why, in the ALJ's view, Jaco's symptom testimony was inconsistent with the medical and other evidence in the record. First, the ALJ found that "[l]ongitudinally, the claimant [was] treated with multiple modalities including medication and counseling with some relief from her symptoms." *Id.* at PageID.42 (AR at 25). In so finding, the ALJ appears to have concluded that Jaco's symptoms were stable and limited because of the treatment she had received. *See id.* at PageID.43 (AR at 26) ("[M]ental status examinations are longitudinally normal with the claimant reporting that her mood was well controlled, she was alert and orientated,

---

per month. ECF No. 6-3, at PageID.42-43 (AR at 25-26). The Court addresses that aspect of the ALJ's decision at the tail end of this Order.

[4]     As the Ninth Circuit has explained, "ALJs commonly use the phrase 'not entirely consistent' the same way the ALJ did in this case—to mean that the claimant's testimony is *inconsistent* with other evidence in the record." *Smartt v. Kijakazi*, 53 F.4th 489, 499 n.2 (9th Cir. 2022). That said, ALJs "might consider replacing the phrase 'not entirely consistent' with simply 'inconsistent'" to avoid misunderstandings. *Id.*

with appropriate hygiene, and normal affect, insight and judgment . . . .").  In support of

that conclusion, the ALJ pointed to the following:

- a February 2022 medical report indicating that Jaco's "mood was well controlled, she was alert and oriented, with appropriate hygiene, normal affect and normal insight and judgment," *id.* at PageID.41 (AR at 24);

- a May 2022 medical report stating that Jaco was "tearful however was dressed appropriately, with good hygiene, alert and oriented, had normal insight and judgment," *id.*;

- a June 2022 medical report indicating that Jaco "presented with suicidal ideations but otherwise normal thought content," *id.*;

- a September 2022 medical report noting that "despite being anxious she presented with normal appearance and activity with average eye contact; was cooperative, with full affect and clear speech, logical thought process, normal perceptions, cognition, intelligence and judgment and without hallucinations," *id.* at PageID.41-42 (AR at 24-25);

- a February 2023 medical report recording that Jaco "appeared anxious, however also with euthymic mood," *id.* at PageID.42 (AR at 25);

- an August 2023 examination that was "unremarkable," *id.*; and

- December 2023 and February 2024 reports noting an "anxious mood" but "otherwise typically normal mental status findings," *id.*

But the ALJ did not explain why these reports were inconsistent with Jaco's testimony

that she could not get out of bed as many as three times a week; could not sleep for

three to four days straight around three times a month; and could not significantly

participate in daily activities.

Second, the ALJ wrote that Jaco's "symptoms of PTSD, depression, and anxiety"

were "typically susceptible to conservative treatment."  *Id.* at PageID.43 (AR at 26).  The

ALJ did not explain what evidence in the record supported the conclusion that any

treatment—let alone conservative treatment—could reduce the severity of Jaco's

symptoms to such an extent that she could resume full-time work.

Third, the ALJ concluded that Jaco's "daily activities" indicated that she "is

essentially independent and able to perform a wide array of activities despite her

impairments, including the ability to bathe, dress, and take care of herself, prepare

simple meals, do light household work, drive a vehicle, manage money, shop, pay

attention, follow instructions, draw and paint, and socialize."  *Id*.  In support of these

conclusions, the ALJ cited Jaco's hearing testimony, as well as two "Function Reports"

that Jaco had filled out in connection with her Social Security applications.  *See id*.; ECF

No. 6-7, at PageID.359-66 (AR at 337-44); *id.* at PageID.383-90 (AR at 361-68).  The ALJ

acknowledged that "these activities are not determinative of the ultimate issue," but

found that "they suggest fewer limitations than alleged and are inconsistent with

preclusion of the world of work."  ECF No. 6-3, at PageID.43 (AR at 26).

The ALJ's chosen RFC effectively dictated the result at the last two steps of the

five-step sequential analysis:  Jaco could not perform any past work, but she could

perform work that exists in significant numbers in the national economy.  *Id.* at

PageID.44 (AR at 27).  Given that latter finding, the ALJ denied Jaco's applications for

disability benefits and supplemental insurance.  *Id.* at PageID.45-46 (AR at 28-29).

The Appeals Council thereafter denied Jaco's request for review of the ALJ's

decision, making the ALJ's decision the final decision of the Commissioner.  *Id.* at

PageID.18-23 (AR at 1-6).  Jaco's appeal followed, and this Court has jurisdiction under

42 U.S.C. § 405(g).

## STANDARD OF REVIEW

This Court must affirm an ALJ's disability determination unless "it is either not

supported by substantial evidence or is based upon legal error."  *Luther v. Berryhill*, 891

F.3d 872, 875 (9th Cir. 2018).  The substantial evidence standard is deferential, requiring

"only such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion."  *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (cleaned up).  But

"substantial" means "more than a mere scintilla."  *Id.* (cleaned up).

Where "evidence is susceptible to more than one rational interpretation," the

ALJ's conclusion must be upheld.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

But the Court may only defer to those reasons the ALJ actually offers.  As the Ninth

Circuit has explained, "[l]ong-standing principles of administrative law require us to

review the ALJ's decision based on the reasoning and factual findings offered by the

ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have

been thinking."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009);

*see also Orn*, 495 F.3d at 630 ("We review only the reasons provided by the ALJ in the

disability determination and may not affirm the ALJ on a ground upon which [the ALJ]

did not rely."); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (holding that it is

"error . . . to affirm the ALJ's credibility decision based on evidence that the ALJ did not

discuss").

## DISCUSSION

In this appeal, Jaco contends that the ALJ provided insufficient reasons to reject

her symptom testimony.  The Court agrees.

When an ALJ finds that a claimant is not malingering but instead has a severe

impairment "which might reasonably produce the pain or other symptoms alleged," an

ALJ can "reject the claimant's testimony about the severity of [their] symptoms only by

offering specific, clear and convincing reasons for doing so."  *Brown-Hunter v. Colvin*,

806 F.3d 487, 492-93 (9th Cir. 2015) (cleaned up); *see also Orn*, 495 F.3d at 635.  Those

reasons "must be sufficiently specific to allow a reviewing court to conclude the

adjudicator rejected the claimant's testimony on permissible grounds and did not

arbitrarily discredit a claimant's testimony regarding pain."  *Brown-Hunter*, 806 F.3d at

493 (cleaned up).

The ALJ did not satisfy these standards here.  Although the ALJ identified three

reasons for rejecting Jaco's symptom testimony, the ALJ did not adequately explain

why any of these reasons contradicted, undermined, or otherwise discredited Jaco's

testimony.

1.    Begin with the first of the ALJ's reasons, which was that "[l]ongitudinally, the claimant [was] treated with multiple modalities including medication and counseling with some relief from her symptoms." ECF No. 6-3, at PageID.42 (AR at 25). In support of this stated reason, the ALJ identified several medical reports showing that, on various occasions, medical professionals observed that Jaco had appropriate hygiene, communicated clearly, was alert and cooperative, and had normal perceptions. *Id.* at PageID.41-42 (AR at 24-25). This evidence does not contradict Jaco's symptom testimony. Jaco did not testify that she could *never* get out of bed, associate with others, maintain proper hygiene, or have a calm and ordinary conversation. Her testimony was, instead, that her PTSD, anxiety, and depression kept her in bed as often as three days a week, prevented her from sleeping three times a month for three to four days at a time, and generally prevented her from fully participating in everyday activities. The fact that Jaco still regularly had cogent moments—including in periodic appointments with medical professionals—does not obviously contradict her testimony about struggling with PTSD, anxiety, or depression on other occasions to such an extent that she could not get out of bed. As the Ninth Circuit has cautioned, "while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). That is precisely the error the ALJ committed here.

Consider how the Ninth Circuit handled comparable circumstances in *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017).  In *Trevizo*, an ALJ had discredited a claimant's testimony that she was "unable to walk for long distances given the psoriatic plaques on her feet."  *Id.* at 679.  The ALJ found this testimony was inconsistent with the fact that "treatment notes"—from five separate medical visits—"consistently state that her feet appeared normal."  *Id.*  The Ninth Circuit found that this stated reason for rejecting the claimant's symptom testimony was not clear and convincing, noting that "[o]ccasional symptom-free periods are not inconsistent with disability."  *Id.* (cleaned up).  As the Ninth Circuit explained, "[i]t does not discredit" the claimant's symptom testimony "if her feet were not *invariably* covered in sores."  *Id.* (emphasis in original).[5] The same logic requires rejecting the ALJ's reasoning here:  the fact that Jaco was not *invariably* incapacitated by her PTSD, anxiety, and depression does not discredit her testimony that she occasionally was.

---

[5]     The Ninth Circuit identified other weaknesses in the ALJ's reasoning, including that treatment notes from only five of the twenty-two medical visits with that doctor noted the claimant's feet appeared normal, that the notes showed that up to 90 percent of the claimant's body was covered in psoriatic plaques at various points in her treatment, and that it was possible the doctor examining the claimant's feet only looked for ulcers (rather than psoriasis).  *Trevizo*, 871 F.3d at 679 & n.7.  But while there were multiple reasons why the ALJ's reasoning was faulty, one independently sufficient reason was the assumption that a claimant's feet could not be *occasionally* covered in sores merely because they were not "*invariably* covered in sores."  *Id.* at 679.  Likewise, here, the ALJ erred in concluding that Jaco could not be *occasionally* incapable of getting out of bed or meaningfully participating in ordinary activities merely because she sometimes presented (during medical appointments that she managed to attend) as if she could.

14

The Commissioner resists this conclusion, contending that the ALJ's first reason for rejecting Jaco's symptom testimony was sufficient.  But the Commissioner's arguments are unconvincing.  As an initial matter, the Commissioner points to the fact that in one medical record—memorializing a February 11, 2022, appointment in which Jaco sought a refill of one of her medical prescriptions—Jaco's depression was listed as "in remission."  ECF No. 10, at PageID.1255 (quoting ECF No. 6-8, at PageID.456 (AR at 433)).  The Commissioner does not explain why the fact that Jaco's depression was supposedly "in remission" on a date that *preceded* the onset of her severe impairments in July 2022 would contradict Jaco's testimony about the severity of her symptoms *during* her alleged period of disability.  The Commissioner also points to other instances in which Jaco appeared to be well-functioning during medical appointments.  This argument suffers from the same flaw as the ALJ's decision:  the Commissioner does not address how occasional moments of lucidity would contradict Jaco's testimony about regular moments of incapacitating symptoms.

Shifting gears, the Commissioner points to the ALJ's statement that medication and treatment afforded Jaco "some relief from her symptoms," ECF No. 6-3, at PageID.42 (AR at 25), and he argues that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability," ECF No. 10, at PageID.1255 (quoting *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017)).  But Jaco herself acknowledged that medication and counseling were providing her some relief; her

15

testimony, though, made it clear that these treatments were not enough to enable her to secure full-time employment.  Far from contradicting Jaco's testimony, then, the fact that medication and treatment provided "some relief from her symptoms," ECF No. 6-3, PageID.42 (AR at 25), was entirely consistent with Jaco's testimony.  And recall that the VE's testimony established that Jaco would be ineligible for work full-time if she had to miss just two days of unscheduled work a month, or if she needed forty minutes of unscheduled breaks.  Neither the ALJ nor the Commissioner identifies any evidence in the record—and the Court sees none—that would support the conclusion that medication and counseling had so significantly improved Jaco's symptoms that she would no longer need to miss at least two unscheduled days of work a month.[6]

2.    The ALJ's second reason for rejecting Jaco's symptom testimony was that her symptoms "have been typically susceptible to conservative treatment."  *Id.* at PageID.43 (AR at 26).  To the extent the ALJ was merely reformulating the view—expressed in the first stated reason—that treatment had provided Jaco some relief from her symptoms,

_____

[6]    Although the Commissioner quotes the Ninth Circuit as saying that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability," ECF No. 10, at PageID.1255, the Ninth Circuit's sentence, in fact, began with the word "Such," *Wellington*, 878 F.3d at 876.  And when the Ninth Circuit spoke of "[s]uch evidence of medical treatment," it was referring to the kind of treatment it had described in its preceding sentence:  treatment that successfully helps an individual "return to a level of function close to the level of function they had before they developed symptoms."  *Id.* (cleaned up).  The Commissioner does not suggest—let alone cite record evidence in support of a suggestion—that the medication and treatment Jaco received successfully relieved her symptoms to *that* sizeable extent.

the Court has already explained why that is an insufficient explanation for rejecting

Jaco's symptom testimony. It appears, however, that the ALJ was here offering a

distinct reason: that Jaco's symptom testimony was undermined by the fact that the

treatment she received was "conservative."

It is true that conservative treatment can sometimes be a sign that symptoms are

not as serious as a claimant suggests. For example, if more aggressive treatment is

available and the claimant declines it, that can be evidence supporting the conclusion

that the symptoms are milder than the claimant says they are. *See, e.g., Sukach v.*

*O'Malley*, Civil No. 24-00026, 2024 WL 4565916, at *6 (D. Haw. Oct. 24, 2024) (explaining

that "the Ninth Circuit has made clear that an ALJ may use 'evidence of conservative

treatment' to discount a claimant's testimony regarding the severity of their

impairment" (quoting *Smartt*, 53 F.4th at 500)), *appeal filed*, *Sukach v. King*, No. 24-7735

(9th Cir. Dec. 20, 2024). But to reject a claimant's symptom testimony based on

conservative treatment, the record must contain evidence that a more aggressive,

appropriate treatment was available. *Loniza v. King*, Civil No. 23-00352, 2025 WL

435943, at *5 (D. Haw. Feb. 7, 2025) (citing *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664

(9th Cir. 2010)). Here, the ALJ pointed to none, and the record does not support the

conclusion that there was any. Granted, Jaco was on at least one occasion hospitalized,

*see supra* p.6 note 2, and hospitalization is a more aggressive form of treatment than

those Jaco typically received. But there is no reason to believe that longer-term or more

17

frequent hospitalization was an appropriate form of treatment for the kinds of symptoms Jaco faced.  The notion that Jaco received conservative treatment, therefore, is an insufficient reason to reject her symptom testimony.

3.    The ALJ's third and final reason for rejecting Jaco's symptom testimony was the ALJ's view that Jaco was "essentially independent and able to perform a wide array of activities despite her impairments."  ECF No. 6-3, at PageID.43 (AR at 26).  The ALJ acknowledged that "these activities are not determinative of the ultimate issue," *id.*, and so even if the ALJ's assessment of Jaco's activities of daily living were appropriate, it would not—by the ALJ's own acknowledgment—provide a sufficient reason to affirm the ALJ's decision.

But the ALJ also erred in handling Jaco's activities of daily living.  Recognizing that "'disability claimants should not be penalized for attempting to lead' their 'lives in the face of their limitations,'" the Ninth Circuit has "provided guidelines for using evidence of a claimant's activities of daily living to assess a claimant's symptom testimony."  *Auapaau v. O'Malley*, Civil No. 24-00176, 2024 WL 4301378, at *3 (D. Haw. Sept. 26, 2024) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).  Under these guidelines, "daily activities may be found to bear on the credibility of a claimant's testimony only if (1) the activities actually contradict the claimant's symptom testimony, or (2) they show that the claimant spends a substantial part of their day

engaged in pursuits that are transferable to a work setting." *Id.* (citing *Orn*, 495 F.3d at 639).

The ALJ's decision satisfied neither aspect of those guidelines here. Take the question of whether Jaco's activities actually contradicted her symptom testimony. The ALJ cited Jaco's Function Reports for the facts that Jaco could "bathe, dress, and take care of herself." ECF No. 6-3, at PageID.43 (AR at 26). None of those facts contradict anything Jaco said in her hearing testimony—she often could do these things, even though she sometimes could not—and the ALJ does not suggest otherwise. The ALJ further cited the Function Reports for the view that Jaco could "drive a vehicle." *Id.* Far from inconsistent with her hearing testimony, Jaco herself explicitly acknowledged as much in that testimony. *Id.* at PageID.63 (AR at 46). The ALJ cited the Function Report to support the fact that Jaco could "prepare simple meals." *Id.* Jaco's full statement in her Function Report, however, was that she prepares "sandwiches" and "frozen dinners," but that she does not trust herself to use "the stove or cut anything . . . because I burn, drop and ruin meals because I get really bad depression or [a]nxiety and get lost in my mind sometimes while doing things." ECF No. 6-7, at PageID.361 (AR at 339). That is not inconsistent with her hearing testimony that she would not cook the meals for her children because she would "burn everything, including the pots," as she was "not in [her] mind." ECF No. 6-3, at PageID.99 (AR at 82). Finally, the ALJ cited the Function Report for the fact that Jaco could "do light

household work, . . . manage money, shop, pay attention, follow instructions, draw and paint, and socialize." *Id.* at PageID.43 (AR at 26). Here again, Jaco's hearing testimony was entirely consistent with that conclusion—she often could do those things, despite the fact that, in light of her PTSD, anxiety, and depression, she sometimes could not.

To be sure, the ALJ's written decision also more broadly asserted that Jaco is "essentially independent," is "able to perform a wide array of activities despite her impairments," and is not "preclu[ded] from the world of work." *Id.* These assertions would, of course, be inconsistent with Jaco's testimony that her symptoms did preclude her from full-time work. But these assertions are no more than conclusions, not reasons for reaching those conclusions. And nothing the ALJ cited adequately supported these conclusions. The Court cannot affirm an ALJ's assertion when there is not substantial evidence to support it. *See Trevizo*, 871 F.3d at 681 (rejecting the ALJ's assertion that the claimant's dizziness "would improve" with "medication compliance" because the ALJ "cited no treatment notes corroborating this assertion, no doctor made the connection between [the claimant's] dizziness and medication noncompliance, and the record does not substantiate this belief").

In seeking to defend the ALJ's reliance on Jaco's activities of daily living, the Commissioner identifies other aspects of the evidentiary record that arguably contradict Jaco's hearing testimony. ECF No. 10, at PageID.1256-57. But the Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the

20

ALJ on a ground upon which [the ALJ] did not rely." *Orn*, 495 F.3d at 630. And it would be "error . . . to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss." *Connett*, 340 F.3d at 874.

Because the ALJ did not provide clear and convincing reasons for rejecting Jaco's symptom testimony, and because that symptom testimony would establish Jaco's disability if credited, the Court cannot affirm the ALJ's decision. At the same time, because the ALJ could possibly offer sufficient reasons to reject that testimony on remand, the Court agrees with the Commissioner, *see* ECF No. 10, at PageID.1260, that the proper course is to remand for further proceedings.

\*     \*     \*

One final matter remains. Although not dispositive given the Court's ruling on Jaco's symptom testimony, Jaco also challenges the ALJ's rejection of the medical opinion testimony of Akoni Kanaele, Marriage and Family Therapist (MFT) of the Big Island Health Clinic, who opined that Jaco would miss more than three days of work per month owing to the symptoms of her PTSD, anxiety, and depression. ECF No. 8, at PageID.1247 (citing ECF No. 6-8, at PageID.1222 (AR at 1199)). The ALJ found that this opinion was "not supported by or consistent with the claimant's longitudinal treatment and the typical and consistent mental status examination findings cited above." ECF No. 6-3, at PageID.42-43 (AR at 25-26).

In support of this conclusion, the ALJ cited the medical report from the February 11, 2022, appointment in which Jaco sought a refill of one of her medical prescriptions, and in which Jaco's depression was listed as "in remission." *Id.* (citing ECF No. 6-8, at PageID.456 (AR at 433)). As the Court has already explained above—in response to the Commissioner's attempt to rely on this same document—this report is unpersuasive both because it precedes the July 2022 onset date of Jaco's severe impairments, and because moments of lucidity do not preclude moments of incapacitation.

The ALJ also cited medical records similar to those on which the ALJ relied to reject Jaco's symptom testimony—reports showing that on various occasions, medical professionals had observed that Jaco had appropriate hygiene, communicated clearly, was alert and cooperative, and had normal perceptions. *Id.* These reports do not support rejecting MFT Kanaele's opinion for the same reasons that they do not support rejecting Jaco's symptom testimony. *See supra* pp. 12-15. And for those same reasons, the Court concludes that the ALJ's rejection of MFT Kanaele's medical opinion is unsupported by substantial evidence.

## <u>CONCLUSION</u>

For the foregoing reasons, the Commissioner's decision denying Jaco's

applications for Social Security disability and disability insurance benefits is

REVERSED and REMANDED for further administrative proceedings consistent with

this Order.

IT IS SO ORDERED.

DATED:  April 18, 2025, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

Civil No. 24-00472 MWJS-KJM, *Elizabeth Jaco v. Leland Dudek*; ORDER REVERSING
DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING
FOR FURTHER ADMINISTRATIVE PROCEEDINGS

23